UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BILL AYALA,

*Plaintiff*

-against-

CABLE COMMUNICATIONS, LLC, SAFE ROAD SOLUTIONS INCORPORATED, JAMES TELESCO, MELANIE TELESCO nee CORDERO, and NEIL TOMASETTI,

*Defendants*

Dkt No. 26-cv-2433

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff BILL AYALA ("**Plaintiff**"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to themselves and upon information and belief as to others, alleges as follows:

## NATURE OF THE ACTION

1. Defendants employed Plaintiff as a CDL Driver from on or about January 6, 2025, until his termination on or about February 20, 2026. He was tasked with loading, operating, and unloading supplies and equipment at Defendants' work sites.

2. Throughout this employment, Defendants repeatedly altered handwritten time records to avoid paying Plaintiff's full regular and overtime wages. Defendants also repeatedly split Plaintiff's time and pay between two interrelated entities, ensuring neither entity reported more than forty (40) hours per week, thereby avoiding overtime wages and creating the appearance of compliance with New York Department of Transportation ("**DoT**") public works contracts.

3. Plaintiff repeatedly asked management about these pay discrepancies. Plaintiff also repeatedly challenged Defendants' unsafe practices, including requiring employees to operate unregistered, uninsured, uninspected, and dangerous vehicles. On or about February 19, 2026,

Plaintiff refused to drive with a damaged steering system because he could not safely or reliably control the vehicle.

4. Plaintiff was fired one day after refusing to operate this unsafe vehicle, despite no prior performance issues or warnings.

5. Defendants willfully and intentionally violated the Fair Labor Standards Act (the "**FLSA**"), 29 U.S.C. §§ 206, 207, & 215, and New York Labor Law ("**NYLL**") §§ 191, 193, & 650 *et seq.*, by

a. failing to pay Plaintiff for each hour worked,

b. failing to pay mandatory overtime wages, and

c. terminating Plaintiff in retaliation for his questions regarding pay discrepancies and/or refusal to participate in Defendants' dangerous unlawful activity.

## **JURISDICTION & VENUE**

6. This Court has subject matter jurisdiction over this Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the federal and state law claims are so related that they form part of the same case and/or controversy.

8. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Defendants' primary facilities and business operations are located in this district and a substantial part of the events and omissions at issue in this case occurred in this district.

## **JURY DEMAND**

9. Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

10. Plaintiff BILL AYALA is a natural person who resided in the State of New York at all times relevant to this action.

11. Defendant CABLE COMMUNICATIONS, LLC ("**Cable Comm**") is a limited liability company formed and existing under the laws of the State of New York.

12. Cable Comm designs, installs, tests, and certifies Internet Service Provider ("**ISP**") infrastructure. It employs numerous CDL Drivers, who are tasked with transporting materials and equipment used to install, test, and certify ISP infrastructure.

13. Cable Comm is an enterprise engaged in commerce within the meaning of the FLSA.

14. Cable Comm routinely handles equipment and materials moved in interstate commerce including but not limited to technological components used for ISP cable installation and operation.

15. Upon information and belief, Cable Comm's annual revenue exceeds $500,000 per annum.

16. Cable Comm employed Plaintiff within the meaning of the FLSA and NYLL from on or about January 6, 2025, until on or about February 20, 2026.

17. Defendant SAFE ROAD SOLUTIONS INCORPORATED ("**Safe Road**") is a domestic corporation formed and existing under the laws of the State of New York.

18. Safe Road provides traffic safety and management services for construction projects, events, and roadways.

19. Safe Road is an enterprise engaged in commerce within the meaning of the FLSA.

20. Safe Road routinely handles equipment and materials moved in interstate commerce including but not limited to construction equipment.

21. Upon information and belief, Safe Road's annual revenue exceeds $500,000 per annum.

22. Safe Road employed Plaintiff within the meaning of the FLSA and NYLL.

23. Cable Comm and Safe Road operated as a single business enterprise.

24. Cable Comm and Safe Road share common ownership, management, employees, and office space in Westchester County, New York.

25. Cable Comm and Safe Road both paid the same employees for the same work pursuant to the same policies and practices.

26. Upon information and belief, Cable Comm and Safe Road had common payroll personnel, policies, and procedures.

27. Their operations are so interrelated as to constitute a single enterprise and/or Plaintiff's joint employer.

28. Defendant JAMES TELESCO ("**Telesco**") is a natural person who resided in the State of New York at all times relevant to this action.

29. Telesco owns and operates Cable Comm and Safe Road. He is Cable Comm's President and Chief Executive Officer ("**CEO**") and maintains a private office at Cable Comm and Safe Road's joint headquarters. He has the power to hire and fire their employees, supervises and controls said employees' work schedules and conditions of employment, maintains employment records, and dictates Cable Comm and Safe Road's pay policies.

30. Telesco employed Plaintiff within the meaning of the FLSA and NYLL from on or about January 6, 2025, until on or about February 20, 2026.

31. Defendant MELANIE TELESCO nee CORDERO ("**Cordero**") is a natural person who resided in the State of New York at all times relevant to this action.

32. Upon information and belief, Cordero co-owns Cable Comm and Safe Road.

33. Cordero is Safe Road's CEO. She controls Safe Road's operations, including the power to hire and fire employees, supervise and control employee work schedules and conditions of employment, maintains employment records, and dictates pay policy.

34. Cordero employed Plaintiff within the meaning of the FLSA and NYLL from on or about January 6, 2025, until on or about February 20, 2026.

35. Defendant NEIL TOMASETTI ("**Tomasetti**") (together with Cable Comm, Safe Road, Telesco, and Cordero, "**Defendants**") is a natural person who resided in the State of New York at all times relevant to this action.

36. Tomasetti was hired as Cable Comm's Senior Director of Operations in or around September 2025 and was named Vice President of Operations in November 2025.

37. Tomasetti oversaw Cable Comm's operations and, upon information and belief, Safe Road's operations. He had the power to hire and fire Cable Comm and Safe Road employees, supervises and controls said employees' work schedules and conditions of employment, maintains employment records, and dictates Cable Comm and Safe Road's pay policies.

38. Tomasetti employed Plaintiff within the meaning of the FLSA and NYLL from in or around September 2025 until on or about February 20, 2026.

39. Defendants jointly determined Plaintiff's rate and method of pay and exercised control over Plaintiff's work.

40. Defendants jointly employed Plaintiff, and all similarly situated employees, within the meaning of the FLSA and NYLL and as such are jointly and severally liable for the conduct complained of herein.

## FACTS

41. Plaintiff worked for Defendants as a full-time W-2 employee from on or about January 6, 2025, to February 20, 2026.

### Unpaid Wages

42. He was initially paid $35 per hour, increasing to $37 per hour in or around March 2025.

43. Plaintiff submitted handwritten time sheets to Defendants on a weekly basis.

44. Defendants manually changed Plaintiff's time sheets to give the appearance Plaintiff had worked fewer hours.

45. Defendants deducted time from Plaintiff's time sheets for the weeks of January 20, 2025, and April 14, 2025.

46. Upon information and belief, Defendants deducted time from most or all of Plaintiff's time sheets.

47. As a result of these deductions, Plaintiff was not paid for each hour worked.

48. As a result of these deductions, Plaintiff was not paid full overtime wages.

49. There was no legal basis for these deductions, which were unlawful.

50. Plaintiff reported these deductions to Cable Comm and Safe Road's human resources department, as well as directly to Telesco.

51. Defendants had a policy and/or practice of removing time from its hourly employees' time sheets, including Plaintiff's time sheets.

<u>DoT Projects</u>

52. Defendants performed work for the DoT related to public works projects.

53. Upon information and belief, the terms of this work were governed by DoT contracts restricting the total number of hours Defendants' employees would be permitted to work.

54. Upon information and belief, Defendants' employees were contractually prohibited from working more than 40 hours in any given work week.

55. Plaintiff was assigned to DoT public works projects.

56. Plaintiff routinely worked more than 40 hours per week while assigned to DoT public works projects.

57. When Plaintiff was assigned to DoT public works projects, Defendants paid him in part through Cable Comm and in part through Safe Road.

58. Plaintiff worked 44 hours in the week of January 16, 2026. He was paid 26.5 hours by Cable Comm and 17.5 hours by Safe Road.

59. There was no justification for splitting Plaintiff's time between Cable Comm and Safe Road.

60. Upon information and belief, Defendants regularly and routinely split Plaintiff's and other employees' pay between Cable Comm and Safe Road without justification.

61. Upon information and belief, the division of payroll between Cable Comm and Safe Road was an artificial scheme designed to evade overtime and Prevailing Wage obligations.

62. Defendants had a policy and/or practice of splitting pay on DoT public works projects so that neither Cable Comm nor Safe Road would be responsible for paying more than 40 hours in any given week.

Motor Vehicle Violations

63. Defendants maintain a fleet of heavy and commercial vehicles, which they use to transport tools, materials, and equipment to and between job sites.

64. Defendants did not properly maintain these vehicles, many of which were unsafe.

65. Defendants regularly instructed Plaintiff and Class Members to drive dangerous vehicles.

66. Plaintiff was repeatedly ordered to drive vehicles with improperly secured cargo, damaged fuel tanks, leaking fuel lines, cracked mirrors and windshields, and broken taillights, and/or signals, among other defects. Many of these vehicles did not have proper insurance, registration, or inspection papers.

67. In or around December 2025, Plaintiff refused to transport heavy cables because the 1,000 pound cable spools were not properly secured and a danger to other drivers. Defendants did not re-secure the cable spools and instead ordered another employee to transport them as is, without any regard for public safety.

68. On or about February 19, 2026, Plaintiff refused to drive a large dump truck that had previously failed inspection because of damage to the steering mechanism, among other issues. He was fired the very next day.

69. Plaintiff had been in good standing and had never been disciplined. Upon information and belief, he was fired in retaliation for his refusal to drive dangerous vehicles.

## CLASS ACTION ALLEGATIONS

70. Plaintiff brings this action on behalf of all Defendants' current and former hourly workers (i) whose timesheets were unlawfully changed and/or (ii) worked as truck drivers assigned to DoT projects who received less than the prevailing rate from six years prior to the filing of this complaint through entry of judgment in this case (the "**Class Members**").

71. Plaintiff and the Class Members are similarly situated in that Defendants rewrote their time sheets and/or divided their time between multiple entities to avoid paying employees' full wages.

72. The Class Members are so numerous that joinder of all members is impractical.

73. The Class Members are readily ascertainable from Defendants' records and notice can be provided by means permissible under Rule 23.

74. Common questions of law and fact predominate over individual issues including, but not limited to, whether Defendants (i) illegally changed employee time sheets, (ii) illegally paid employees through a second entity to disguise total hours worked, (iii) violated state and federal wage and hour laws, (iv) forced or attempted to force employees to drive dangerous vehicles under unlawful conditions, and (v) acted willfully and intentional pursuant to company policy and/or practice.

75. Defendants have acted or refused to act on grounds generally applicable to the entire class such that class wide declaration and/or injunctive relief is appropriate.

76. Plaintiff's claims are typical of the Class Members' claims.

77. Plaintiff and the Class Members worked under the same conditions, subject to the same unlawful policies and/or practices, resulting in the same or substantially similar injuries.

78. Plaintiff will fairly and adequately represent the interests of the Class Members.

79. There are no conflicts between Plaintiff and the Class Members. Plaintiff brings this action out of a desire to help all Class Members, not merely to recover their own damages.

80. A class action is superior to other available methods of fairly and efficiently adjudicating this case.

81. Class certification will let Class Members without the resources to pursue relief while avoiding duplicative litigation that might result in inconsistent judgments.

## COLLECTIVE ACTION ALLEGATIONS

82. Plaintiff and the Class Members are victims of a common policy and plan, perpetrated by Defendants in violation of the FLSA and NYLL.

83. Defendants intentionally, willfully, and repeatedly harmed Plaintiff and the Class Members via the policies and/or practices described above.

84. Plaintiff and the Class Members were employed and compensated under the same or similar conditions.

85. Defendants regularly and routinely failed to pay Plaintiff and the Class Members full wages.

86. Plaintiff and the Class Members' claims arise from a common nucleus of fact and Defendants' liability is based on the same misconduct. Although the exact amount of damages may vary among Class Members, the damages owed to each Class Member can be easily calculated.

## COUNT ONE
## UNPAID WAGES
(In Violation of the Fair Labor Standards Act)

87. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

88. Defendants employed Plaintiff within the meaning of the FLSA.

89. Defendants were required to pay Plaintiff and the Class Members for all hours worked.

90. Defendants regularly and routinely failed to pay Plaintiff and the Class Members for all hours worked.

91. Defendants' failure was willful and intentional.

92. Plaintiff and the Class Members were injured by Defendants' illegal conduct and as such are entitled to damages under the FLSA.

**COUNT TWO**
**UNPAID REGULAR WAGES**
(In Violation of New York Labor Law)

93. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

94. Defendants employed Plaintiff within the meaning of the NYLL.

95. Defendants were required to pay Plaintiff and the Class Members for all hours worked.

96. Defendants regularly and routinely failed to pay Plaintiff and the Class Members for all hours worked.

97. Defendants' failure was willful and intentional.

98. Plaintiff and the Class Members were injured by Defendants' illegal conduct and as such are entitled to damages under the NYLL.

**COUNT THREE**
**UNPAID OVERTIME WAGES**
(In Violation of the Fair Labor Standards Act)

99. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

100. Defendants employed Plaintiff within the meaning of the FLSA.

101. Defendants were required to pay Plaintiff and the Class Members one and one-half times their regular rate of pay for each hour worked in excess of forty hours per work week.

102. Plaintiff and the Class Members regularly and routinely worked more than forty hours per work week.

103. Defendants failed to pay Plaintiff and the Class Members required overtime wages.

104. Defendants' failure was willful and intentional.

105. Plaintiff and the Class Members were injured by Defendants' illegal conduct and as such are entitled to damages under the FLSA.

**COUNT FOUR**
**UNPAID OVERTIME WAGES**
(In Violation of New York Labor Law)

106. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

107. Defendants employed Plaintiff within the meaning of the NYLL.

108. Defendants were required to pay Plaintiff and the Class Members one and one-half times their regular rate of pay for each hour worked in excess of forty hours per work week.

109. Plaintiff and the Class Members regularly and routinely worked more than forty hours per work week.

110. Defendants failed to pay Plaintiff and the Class Members required overtime wages.

111. Defendants' failure was willful and intentional.

112. Plaintiff and the Class Members were injured by Defendants' illegal conduct and as such are entitled to damages under the NYLL.

**COUNT FIVE**
**Breach of Contract**
(In Violation of New York Common Law)

113. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

114. Defendants entered one or more public works contracts with the State of New York and/or its agencies, including the DoT.

115. Defendants were contractually obligated to pay all laborers, workers, and truck drivers working on public works projects not less than the Prevailing Wage rate as determined by the New York State Department of Labor (the "**Prevailing Wage**").

116. Plaintiff was employed by Defendants as a truck driver, transporting material and equipment to and from public works project sites in downstate New York.

117. Plaintiff was an intended third-party beneficiary under the public works contracts, as the contracts' Prevailing Wage required were made for the direct benefit of workers such as Plaintiff.

118. The applicable Prevailing Wage rate and supplements, as set forth in the New York Department of Labor schedules incorporated into public work contracts exceeds the $37 per hour paid to Plaintiff.

119. Defendants failed to pay the Prevailing Wage.

120. Defendants' failure constitutes a breach of the public works contracts.

121. Plaintiff and the Class Members were proximately and directly injured by Defendants' breach and as such are entitled to monetary damages.

**COUNT SIX**
**RETALIATORY TERMINATION**
On Behalf of Plaintiff Individually
(In Violation of the Fair Labor Standards Act)

122. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

123. Defendants employed Plaintiff within the meaning of the FLSA.

124. Plaintiff's questions about pay discrepancy constitute a protected activity under the FLSA.

125. Defendants were aware of Plaintiff's protected activity.

126. Defendants fired Plaintiff for engaging in protected activity.

127. Plaintiff was injured by Defendants' illegal conduct and as such is entitled to damages under the FLSA.

**COUNT SEVEN**
**RETALIATORY TERMINATION**
On Behalf of Plaintiff Individually
(In Violation of Section 215 of the New York Labor Law)

128. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

129. Defendants employed Plaintiff within the meaning of the NYLL.

130. Plaintiff's questions about pay discrepancy constitute a protected activity within the meaning of the NYLL.

131. Defendants were aware of Plaintiff's protected activity.

132. Defendants fired Plaintiff for engaging in protected activity.

133. Plaintiff was injured by Defendants' illegal conduct and as such is entitled to damages under the NYLL.

**COUNT EIGHT**
**RETALIATORY TERMINATION**
On Behalf of Plaintiff Individually

(In Violation of Section 740 of the New York Labor Law)

134. Plaintiff incorporates and realleges all the allegations contained in the preceding paragraphs.

135. Defendants repeatedly ordered Plaintiff to (i) operate vehicles without valid registrations, insurance, and/or inspection certificates, in violation of New York Vehicle and Traffic Laws ("**VTL**") §§ 306, 319, & 401, and (ii) operate vehicles in unsafe conditions, in violation of VTL§§ 301 & 375 and federal regulation.

136. Plaintiff's refusal to participate in Defendants' unlawful activity, policy, or practice was a protected activity under the NYLL.

137. Defendants were aware of Plaintiff's protected activity.

138. Defendants fired Plaintiff for engaging in protected activity.

139. Plaintiff was injured by Defendants' illegal conduct and as such is entitled to damages under the NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiff hereby requests judgment as follows:

a) certifying this action as a class and collective action;

b) authorizing issuance of notice to all Class Members;

c) awarding Plaintiff and the Class Members compensatory damages in an amount to be determined at trial;

d) awarding Plaintiff and the Class Members liquidated damages;

e) awarding Plaintiff and the Class Members pre- and post-judgment interest;

f) awarding Plaintiff and the Class Members reasonable attorneys' fees and costs; and

g) awarding such other and further relief as the Court deems just and proper.

Dated: March 24, 2026
New York, New York

Respectfully Submitted

Zachary Naidich

Zachary Naidich
NAIDICH LAW
137 5th Ave, 9th Fl.
New York, NY 10010